**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

In re:

Crate Holdings LLC d/b/a Crate Holdings Ammo,

Debtor.

Case No. 24-00312-eg
Chapter 11
Subchapter V

**OBJECTION OF UNITED STATES TRUSTEE TO DEBTOR'S**
**FIRST DAY MOTIONS**

The Acting United States Trustee for Region Four (the "UST") objects and responds to

the Debtor's first day motions that are to be heard on February 2, 2024, as set forth in the *Order*

*and Notice of Emergency Hearing on Chapter 11 First Day Motions* entered on January 29,

2024 (Doc. No. 7).   The UST files this objection pursuant to the authority granted to him by 28

U.S.C. § 586 and 11 U.S.C. § 307.

The grounds for this objection are:

**Cash Collateral Motion (Doc. No. 3)**

1.      The Cash Collateral Motion fails to clearly and specifically designate what expenses need to be paid before a final hearing is held on the Cash Collateral Motion. Fed. R. Bankr. P. 4001(b)(2).  The interim budget included with the Cash Collateral Motion and its proposed order is a six-month budget.   As such, the UST requests that the Court only approve the use of Cash Collateral to the extent the Debtor can demonstrate it is necessary to avoid immediate and irreparable harm on an interim basis.

2.      The Cash Collateral Motion seeks authority to pay employee wages and an owner's draw, but as of the date of this objection, the Debtor has not filed a wages/benefits motion.  Thus, the UST objects to any payroll or draw payments contained in the Cash Collateral budget that were earned prior to the petition date, or to the extent any post-petition compensation or benefits are not earned in the ordinary course of business.  This issue is particularly acute since the Debtor is proposing to make wage payments and owner's draw payments to insiders.

3.      The Cash Collateral Motion seeks authority to make monthly adequate protection payments to the Debtor's "Secured Creditors."  Pursuant to the Cash Collateral Motion, the Debtor was organized in the State of Delaware (Cash Collateral Motion at ¶ 2).  As such, to properly perfect a security interest in the Debtor's Personal Property, the creditor must have filed its financing statement in Delaware.  *See* S.C. Code Ann. §§ 36-9-301; 36-9-307(e).  Although the Debtor includes CFG Merchant Solutions, LLC and E Advance Services as "Secured Creditors," (Critical Vendor Motion at ¶ 6) since those entities appear to have filed financing statements in South Carolina rather than Delaware, their interest in the Debtor's Cash Collateral would be unperfected and they would not be entitled to adequate protection payments.  *See, e.g., G & B Aircraft Mgmt. v. Smoot (In re Utah Aircraft Alliance)*, 342 B.R. 327, 338 (B.A.P. 10th Cir. 2006) (creditor's "failure to perfect its security interest relieves the Trustee from having to show adequate protection of a secured interest"); *In re Cambridge Biotech Corp.*, 178 B.R. 34, 40 (Bankr. D. Mass. 1995) (unperfected and avoidable security interest held not to be entitled to adequate protection); *In re Shree Meldikrupa Inc.*, 2016 Bankr. LEXIS 159 at *16-20 (Bankr. S.D. Ga. 2016) (holding that creditor having unperfected security interest in debtor's assets had no "interest" in cash collateral within the meaning of section 363(a), and was not entitled to adequate protection).

4.      Finally, the Debtor has not provided any bank account information to the UST, and according to its Schedule A/B, its pre-petition funds were maintained in accounts at banking institutions that have not executed a Uniform Depository Agreement or are approved depositories.  The UST requests that any of the Debtor's use of Cash Collateral be conditioned upon compliance with 11 U.S.C. § 345 and the UST's Operating Guidelines and Reporting Requirements for Chapter 11 Debtors-in-Possession for authorized depositories.

**Critical Vendor Motion (Doc. No. 4)**

1.      The Debtor identifies Mid Atlantic Ammo (the "Critical Vendor") as a supplier of specialized inventory to the Debtor, which the Debtor cannot obtain elsewhere. (Critical Vendor Motion at ¶ 8).  As recognized by the Debtor, the Critical Vendor is an unsecured, non-priority creditor (Critical Vendor Motion at ¶ 11) holding a pre-petition claim in the approximate amount of $57,000 (Motion at ¶ 13).  Through the Critical Vendor Motion, the Debtor seeks to repay the Critical Vendor's pre-petition claim in full through weekly payments of $3,000, and with post-petition purchases being made on a cash-on-delivery basis or with 30-day terms.  (Critical Vendor Motion at ¶ 13).

2.      As recognized by the Debtor, courts review three parts in assessing whether some unsecured creditors should be paid outside of a plan of reorganization: "(1) the vendor is necessary for the successful reorganization of the debtor, (2) the transaction is in the sound business judgment of the debtor, and (3) the favorable treatment of a critical vendor does not prejudice other unsecured creditors." *In re Universal Finance, Inc.*, 493 B.R. 735, 738 (Bankr. M.D.N.C. 2013).

3.    To satisfy the requirement of necessity prong, in addition to showing that no alternative to a vendor exists, the Debtor must also show that the vendor will not provide its services without the exceptional treatment. *In re United American, Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005). Although the Debtor has asserted that the Critical Vendor will not continue to do business with the Debtor without the treatment provided for in the Critical Vendor Motion (Critical Vendor Motion at ¶¶ 8, 14)[1], the Debtor has not identified the parties with whom these discussions occurred and any alternative arrangements that were proposed to the Critical Vendor. The Debtor must produce evidence regarding this requirement.

4.    To satisfy the business judgment prong, the Debtor must make a showing that payment to any critical vendor assures the vendor's future performance. *In re United American, Inc.*, 327 B.R. at 784. The Critical Vendor Motion fails to address whether payment of the Critical Vendor's prepetition debt will garner future performance. The Critical Vendor Motion does not represent that the Critical Vendor has committed to continue doing business with the Debtor post-petition and that the Critical Vendor will refund any amounts paid to it if it fails to continue to do business with the Debtor. The Critical Vendor must agree to be bound by an order requiring it to continue supplying inventory to the Debtor, to disgorge the payment received if the Critical Vendor fails to provide its inventory to the Debtor, the parties agree on the amount due, and that the Critical Vendor is given no more than needed to assure its continued performance. *Id.*; *see also In re TV1 Corp.*, 2009 Bankr. LEXIS 5269 at *5 (Bankr. D. Md. April 7, 2009).

5.    As to the prejudice to other creditors prong, "[e]quality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. IRS*, 496 U.S. 53, 58 (1990); *see also In re Nat'l Gas Distributors, LLC*, 556 F.3d 247, 259 (4th Cir. 2009) ("an overarching policy of the Bankruptcy Code is to provide equal distribution among creditors"). Through the Critical Vendor Motion, the Debtor effectively seeks to alter the priority of the Critical Vendor's claim from a general unsecured claim (where it will be paid pro rata along with other general unsecured creditors) to either a secured claim or administrative expense claim[2] (where it will be paid in full). Although the Debtor has asserted that no other creditors will be prejudiced since paying the Critical Vendor will allow the Debtor to remain a going concern (Critical Vendor Motion at ¶ 24), if there will be a deviation from equality of distribution among unsecured creditors to ensure the survival of a business, it is

---

[1]  Further, these statements are belied by the Critical Vendor's continued willingness to ship inventory to the Debtor on a cash-on-delivery basis or with 30-day terms.

[2] The Debtor has not suggested that the Critical Vendor's claim may qualify as an administrative expense under Bankruptcy Code Section 503(b)(9). However, even payment of Bankruptcy Code Section 503(b)(9) claims prior to confirmation is "exceptional" and only permitted when the potential hardship to the claimant from delay far outweighs the potential prejudice to the debtor and other creditors from immediate payment. *In re Global Home Prods., LLC*, 2006 WL 3791955, at *3-4 (Bankr. D. Del. Dec. 21, 2006).

vital that the Debtor establish through proof and evidence that other unsecured creditors will benefit.

Due to the early nature of the pleadings and the case, the UST reserves his right to raise additional issues regarding the relief requested based on evidence presented at the hearing.

WHEREFORE, the UST asks the Court to deny the relief sought by the Debtor, unless the Debtor can adequately address each of these objections, and to grant such other relief as is appropriate.

GERARD R. VETTER,
ACTING UNITED STATES TRUSTEE
REGION FOUR

By: /s/B. Keith Poston
B. Keith Poston
Trial Attorney, Id. 10599
Office of the United States Trustee
1835 Assembly St., Suite 953
Columbia, South Carolina 29201
(803) 765-5218
(803) 765-5260 (facsimile)
keith.poston@usdoj.gov

Date: January 31, 2024

## CERTIFICATE OF SERVICE

I, B. Keith Poston, do hereby certify that on January 31, 2024, I served the below-named

document:

### OBJECTION OF UNITED STATES TRUSTEE TO DEBTOR'S
### FIRST DAY MOTIONS

by electronic transmission through the Court's Electronic Case Filing system to the following
participants:

Christine E. Brimm, Esquire
J. Kershaw Spong, Esquire

By: /s/B. Keith Poston
B. Keith Poston
Trial Attorney, Id. 10599
Office of the United States Trustee
1835 Assembly St., Suite 953
Columbia, South Carolina 29201
 (803) 765-5218
(803) 765-5260 (facsimile)
keith.poston@usdoj.gov