UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | Case No. 24-00312-eg |
| ) | |
| CRATE HOLDINGS LLC d/b/a Crate Holdings Ammo, ) | Chapter 11 |
| ) | |
| ) | **PLAN OF REORGANIZATION** |
| ) | |
| ) | |
| _____Debtor._____ ) | |

**Crate Holding LLC's Plan of Reorganization, dated April 29, 2024**

This Plan is pursuant to the Small Business Reorganization Act under Subchapter V of Chapter 11 of Title 11 of the United States Code. The Plan contemplates that secured creditors will be paid in full, with general unsecured creditors receiving no less than they would receive in a chapter 7 liquidation and at least the amount of projected disposable income generated from cash flow over a period of thirty-six (36) months.

All holders of claims against the Debtor are encouraged to read the Plan in its entirety before voting to accept or reject the Plan.

**Background for Cases Filed Under Subchapter V**

    A.    Description and History of the Debtor's Business

The Debtor is a limited liability company organized in Delaware, with its principal place of business in Longs, South Carolina. Debtor is in the business of selling ammunition, and has online sales as well as in-store sales at its retail location. It has been in business since the latter part of 2021.

The business was generally doing well until sales slowed more than expected in the summer of 2023. The Debtor took out a high-interest MCA loan to carry the business until sales picked back up again. The Debtor had used MCA loans in the past when operating capital was needed, and had paid them off. This time, however, sales did not pick up quickly enough to cover the ACH withdrawals from the Debtor's bank account from the MCA creditor, so the Debtor took out additional loans to cover it. This had a snowball effect, and became unsustainable.

With the filing of this bankruptcy, the Debtor was able to reject a warehouse lease to save approximately $1,800 per month. The Debtor also cut back on the number of employees, and currently all labor is done by the Debtor's principal and one other employee. Both the principal and the other employee have taken a pay cut since the bankruptcy was filed in order to tighten the budget. In budgeting cash flow going forward, the Debtor intends to set aside a reasonable amount for Reserves to avoid having to take out high interest loans during slower periods. The Reserves will cover ordinary operating expenses as needed when sales are slow, and will also enable the Debtor to make adequate inventory purchases in advance of high volume seasons, without the need to obtain loans or purchase inventory on credit. The Debtor believes that these shifts in the management of cash flow will allow the Debtor to maintain a solid financial footing in order to complete the plan payments as contemplated herein.

    B.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The liquidation analysis in this case demonstrates that unsecured creditors would receive approximately

**24%** in a hypothetical chapter 7 liquidation, as follows:

Assets on the Petition Date:
Cash              $3,002
Inventory         $239,771 (book/liquidation value)
Landlord Deposits  $2,675
Misc              $2,465

Liquidation Analysis:

A chapter 7 trustee would sell the inventory and miscellaneous assets and pay a commission of at least 10%, resulting in proceeds of $218,012. Together with the cash of $3,002 and deposits of $2,675, there would be a balance of **$223,689** in the chapter 7 estate.

Hypothetical Chapter 7 Distributions:
Amount to Distribute:          $223,689

Chapter 7 Trustee Fees         $14,434
Chapter 11 Admin Claims        $30,000 (estimated)
Priority Tax Claim of SC DOR   $1,404
Secured Creditors              $61,387
    **TOTAL**                  **$107,225**

**Balance Remaining to Pay General Unsecured Creditors: $116,464**
**Total General Unsecured Claims: $491,416[1]**
**Estimated Recovery to General Unsecured Creditors in Ch. 7: 24%**

This Plan proposes paying the allowed claims of general unsecured creditors **45%**.

C.    Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as **Exhibit A**.

The Plan Proponent's financial projections show that the Debtor will pay priority, administrative, and secured claims in full, and will have remaining projected disposable income (defined by §1191(d) of the Bankruptcy Code) averaging $6,066 per month. This will be used to pay to the general unsecured creditors. The total projected disposable income in a 3-year period (as provided in §1191(c)(2)) is **$218,376**. This permits a **45%** return to the general unsecured creditors.

Because sales fluctuate, payments to the general unsecured creditors will be made bi-annually.

The final Plan payment is expected to be paid on or before November 30, 2027.

---

[1] This total does not include claims that were disputed for which no proof of claim was filed. It includes the balance that is projected to be owed to Mid Atlantic Ammo ($9,000.00) at the time of confirmation, which has been paid down as a result of the order allowing payment to this critical vendor, filed at ECF 37.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1: Summary**

This Plan of Reorganization (the Plan) under Chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors of Crate Holdings, LLC (the "Debtor") from cash flow from operations.

This Plan provides for
        One (1) Class of priority claims;

        One (1) Class of secured claims;

        One (1) Class of critical vendor, non-priority unsecured claims;

        One (1) Class of general non-priority unsecured claims; and

        One (1) Class of equity security holders.

General non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 45 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with our attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2: Classification of Claims and Interests**

2.01    Class 1: All allowed claims entitled to priority under §507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under §507(a)(8)).

The Debtor does not believe there are any claims in this Class. The priority tax claim of SC Department of Revenue is not in a Class and is treated per Section 3.03 of this Plan.

2.02    Class 2: The claims of **Onramp Funds, Inc.[2] ("Onramp") and Quick Bridge Funding, LLC ("Quick Bridge")** to the extent allowed as a secured claim under §506 of the Code.

---

[2] The proof of claim was also in the name of eCommerce Funding, LLC, but it designated that payments were to be made to Onramp. See POC No. 2.

2.03     Class 3: The claim of **Mid Atlantic Ammo** which has been determined to be a critical vendor. *See* Order, ECF 37.

2.04     Class 4: All non-priority unsecured claims allowed under § 502 of the Code, not otherwise listed in a Class.

The claims in this class include the following, to the extent the claim is allowed:

| | |
|---|---|
| American Express | $1,731.60 (POC 7) |
| American Express | $5,322.55 (POC 8) |
| American Express | $36,420.74 (POC 10) |
| Barton Brimm | $1,293.00 |
| Big Rock Sports | $20,000.00 |
| Capital One | $1,134.22 (POC 6) |
| CFG Merchant Solutions | $71,500.00 |
| Chattanooga Shooting Supplies | $59,000.00 |
| Cutting Edge Bullets | $1,450.64 |
| E-Advance Services, LLC | $41,825 (POC 13) |
| Graf & Sons, Inc. | $65,000.00 |
| Hyperion Munitions | $15,460.00 (POC 4) |
| Iron Valley Supply | $21,000.00 |
| Lee Advance, LLC | $45,360.00 (POC 12) |
| Norma Precision | $30,000.00 |
| Nosler, Inc. | $16,453.60 (POC 3) |
| RSR Group, Inc. | $11,712.63 (POC 5) |
| SC Dept. of Revenue | $20.73 (POC 1 – non-priority, unsecured portion) |
| Signature Payments | $3,007.71 |
| Tactical Gear Distributors | $6,000.00 |
| Top Choice Financial, LLC | $4,774.00 |
| United First LLC/GFE Funding | $0 |
| UPS | $23,950.03 (POC 11) |
| Mini Mall Storage[3] | $0 |
| PNC Bank[4] | $0 |

2.04     Class 5:   Equity interests of the Debtor.  This Class consists of Michael Corcoran, the Debtor's principal.

**Article 3.  Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees.**

3.01     Unclassified Claims

Under §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02     Administrative Expense Claims

The Debtor will owe fees and expenses to the Subchapter V Trustee appointed in the case and to the Debtor's bankruptcy counsel, which constitute administrative expense claims.

The Subchapter V Trustee (Kerk Spong) will be paid in full for his fees and expenses that are approved by the Court

---

[3] Mini Mall Storage and PNC Bank are listed in the schedules as disputed. Neither filed a claim so the claim amount is zero.

[4] See note 3.

upon the filing of an appropriate fee application. Payment will be made at the rate of $500.00 or more per month, until paid in full.

Bankruptcy Counsel for the Debtor (Barton Brimm, PA) will be paid in full for its fees and expenses that are approved by the Court upon the filing of an appropriate fee application, for time and expenses incurred through confirmation of the Plan. Fees and expenses incurred by Barton Brimm after Plan confirmation will be paid by the Debtor without the need for further Court order. Payment will be made at the rate of $2,500.00 or more per month, until paid in full.

3.03    <u>Priority tax claims</u>

Each holder of a priority tax claim will be paid in full on or before the Effective Date of this Plan. The **SC Department of Revenue** has filed a priority tax claim in the amount of $1,403.88 (POC 1). This amount will be paid on or before the Effective Date.

3.04    <u>Statutory Fees</u>

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05    <u>Prospective quarterly fees</u>.

As this case was filed under Subchapter V, no quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) or (a)(7) are owed or will be owed by the Debtor.

**Article 4.  Treatment of Claims and Interests Under the Plan**

4.01    **Claims and interests shall be treated as follows under the Plan:**

<u>Class 1 – Priority Claims</u>.  **This class is UNIMPAIRED.**  Class 1 is unimpaired, and each holder of a Class 1 Priority Claim will be paid in full, in cash, on or before the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order.

<u>Class 2 – Secured Claims of **Onramp** and **Quick Bridge**</u>: **This class is IMPAIRED.**

**Onramp** has filed a claim in the amount of $16,916.14 (POC 2). Onramp will be paid the amount of $1,050.00 or more per month, on or before the last day of each calendar month, until the amount of its Class 2 claim is paid in full. The first payment will be made in the month following the effective date of this Plan. The last payment may be adjusted up or down, depending on the balance of the claim. No interest or other fees will accrue on the claim. **By submitting a vote to ACCEPT this Plan, Onramp agrees to release Michael Corcoran from any and all liability or obligation to Onramp arising from Mr. Corcoran's guarantee.**

**Quick Bridge** has filed a claim in the amount of $44,470.68 (POC 9). Quick Bridge will be paid the amount of $2,750.00 or more per month, on or before the last day of each calendar month, until the amount of its Class 2 claim is paid in full. The first payment will be made in the month following the effective date of this Plan. The last payment may be adjusted up or down, depending on the balance of the claim. No interest or other fees will accrue on the claim. **By submitting a vote to ACCEPT this Plan, Quick Bridge agrees that it will not take any action against Michael Corcoran arising from Mr. Corcoran's guarantee, provided there is not a default by the Debtor under the terms of this Plan which is not cured within 30 days.**

Class 3 – Claim of **Mid Atlantic Ammo**: This class is **UNIMPAIRED.** This creditor will be paid the final balance of its pre-petition claim on or before the effective date of this Plan. The estimated balance is $9,000.00.

Class 4 – All non-priority unsecured claims allowed under § 502 of the Code not listed in another Class. **This class is IMPAIRED.**

Class 4 claims will be paid **45%** (rounded to next dollar) of each allowed claim amount. The Debtor's principal, Michael Corcoran, guaranteed many of the debts in this Class. **By submitting a vote to ACCEPT this Plan, such Class 4 creditor consents and agrees to release Michael Corcoran from any and all liability to such creditor arising from Mr. Corcoran's personal obligation relating to such debt, if any, or arising from his guarantee, to the extent a guarantee exists**.

The Debtor will make payments to Class 4 creditors as follows:

| CREDITOR | 45% OF CLAIM | On or before: 08/31/24 | 11/30/24 | 05/30/25 | 11/30/25 | 05/30/26 | 11/30/26 | 05/30/27 | 11/30/27 |
|---|---|---|---|---|---|---|---|---|---|
| American Express | $780 | $780 | -- | -- | -- | -- | -- | -- | -- |
| American Express | $2,396 | -- | $200 | $400 | $400 | $400 | $400 | $396 | $200 |
| American Express | $16,390 | -- | $1,365 | $2,730 | $2,730 | $2,730 | $2,730 | $2,730 | $1,375 |
| Barton Brimm | $582 | $582 | -- | -- | -- | -- | -- | -- | -- |
| Big Rock Sports | $9,000 | -- | $750 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $750 |
| Capital One | $511 | $511 | -- | -- | -- | -- | -- | -- | -- |
| CFG Merchant | $32,175 | -- | $2,680 | $5,360 | $5,360 | $5,360 | $5,360 | $5,360 | $2,695 |
| Chattanooga Sh. | $26,550 | -- | $2,210 | $4,425 | $4,425 | $4,425 | $4,425 | $4,425 | $2,215 |
| Cutting Edge | $653 | $653 | -- | -- | -- | -- | -- | -- | -- |
| E-Advance | $18,822 | -- | $1,565 | $3,137 | $3,137 | $3,137 | $3,137 | $3,137 | $1,572 |
| Graf & Sons | $29,250 | -- | $2,435 | $4,875 | $4,875 | $4,875 | $4,875 | $4,875 | $2,440 |
| Hyperion Mun. | $6,957 | -- | $580 | $1,160 | $1,160 | $1,160 | $1,160 | $1,160 | $577 |
| Iron Valley Sup. | $9,450 | -- | $785 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $790 |
| Lee Advance | $20,412 | -- | $1,700 | $3,402 | $3,402 | $3,402 | $3,402 | $3,402 | $1,702 |
| Norma Precision | $13,500 | -- | $1,125 | $2,250 | $2,250 | $2,250 | $2,250 | $2,250 | $1,125 |
| Nosler, Inc. | $7,405 | -- | $615 | $1,235 | $1,235 | $1,235 | $1,235 | $1,250 | $615 |
| RSR Group, Inc. | $5,271 | -- | $440 | $878 | $878 | $878 | $878 | $878 | $441 |
| SC Dept. of Rev | $10 | $10 | -- | -- | -- | -- | -- | -- | -- |
| Signature Pymts | $1,354 | -- | $110 | $225 | $225 | $225 | $225 | $225 | $119 |
| Tactical Gear | $2,700 | -- | $225 | $450 | $450 | $450 | $450 | $450 | $225 |
| Top Choice Fin. | $2,149 | -- | $180 | $360 | $360 | $360 | $360 | $360 | $169 |
| United First/GFE | $0 | -- | -- | -- | -- | -- | -- | -- | -- |
| UPS | $10,778 | -- | $895 | $1,795 | $1,795 | $1,795 | $1,795 | $1,795 | $908 |
| Mini Mall Storage | $0 | -- | -- | -- | -- | -- | -- | -- | -- |
| PNC Bank | $0 | -- | -- | -- | -- | -- | -- | -- | -- |
| TOTAL | | $2,536 | $17,860 | $35,697 | $35,697 | $35,697 | $35,697 | $35,697 | $17,918 |

TOTAL PAYMENTS TO CLASS 4 = $216,799.00.

Class 5 – Equity security holders of the Debtor: Mr. Corcoran will maintain his ownership interest in the company.

6

**Article 5:   Allowance and Disallowance of Claims**

5.01    **Disputed Claims**

Any amount of claim set forth in this Plan is for informational purposes only and is not binding as to disputed claims. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection in accordance with the deadlines set forth by the Court or by the Bankruptcy Code or Rules; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    **Delay of distribution on a disputed claim.**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article 6.  Provisions for Executory Contracts and Unexpired Leases**

6.01    **Assumed executory contracts and unexpired leases**

(a)     The Debtor assumes the following executory contracts and unexpired leases as of the date this Plan is filed:

Lease with Bungalow Commons LLC

(b)     Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 14 days after the date of the order confirming this plan.

**Article 7.  Means for Implementation of the Plan**

This Plan will be funded from the Debtor's cash flow. Michael Corcoran will continue in his role as the managing member of the Debtor.

**Article 8:  General Provisions**

8.01 **Definitions and rules of construction**.  The definitions and rules of construction set forth in 11 U.S.C. §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02 **Effective Date**.  The effective date of this Plan is the first business day following the date that is fourteen (14) days after the entry of the confirmation order.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03 **Severability.**  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 **Binding effect.**  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05 **Captions.**  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 **Controlling effect.**  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure) the laws of the State of South Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07 **Corporate governance.**  The Debtor is a limited liability company, and its sole member is Michael Corcoran.

8.08 **Retention of jurisdiction.**  The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:  (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**Article 9.**     **DISCHARGE**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan;
or
(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code.  The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192;
or
(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Article 10: Other Provisions**

Debtor, rather than the subchapter V trustee, will make all Plan payments, regardless of whether the Plan is confirmed pursuant to 11 U.S.C. § 1191(a) or § 1191(b).

Respectfully submitted,
BARTON BRIMM, PA

/s/ Christine E. Brimm
Christine E. Brimm, #6313
P.O. Box 14805
Myrtle Beach, SC  29587
(803) 256-6582
cbrimm@bartonbrimm.com
Attorney for Debtor

[Signature of the Plan Proponent]
Printed Name: Michael A. Corcoran

9

Plan Projections for Crate Holdings LLC
Amounts shown are averages. Actual sales fluctuate.

| | | | Jun-24 | Jul-24 | Aug & forward |
|---|---|---|---|---|---|
| | | **Projected Gross Sales** | 157500 | 157500 | 157500 |
| Jan. 2024 Sales | $43,830.00 | **COGS** | | | |
| Feb. 2024 Sales | $131,003.00 | Cost of Goods Purchased | 106294 | 106294 | 106294 |
| March 2024 Sales | $187,537.00 | Cost To Ship | 10319 | 10319 | 10319 |
| Average Monthly: $120,790.00 | | Credit Card processing fees | 4410 | 4410 | 4410 |
| | | **Gross Profit** | 36477 | 36477 | 36477 |
| 2022 Sales | $1,379,519.00 | *Operating Expenses* | | | |
| 2023 Sales | $2,405,063.00 | Labor | 2600 | 2600 | 2600 |
| Average Annual: $1,890,000.00 | | Electric | 65 | 65 | 65 |
| Average Monthly: $157,500.00 | | Internet | 132 | 132 | 132 |
| | | Rent | 800 | 800 | 800 |
| | | Trustee Fees | 500 | 500 | 500 |
| | | Legal Fees | 2500 | 2500 | 2500 |
| | | Office Expenses (Quickbooks, Ring, Shipstation, Shippo) | 300 | 300 | 300 |
| | | Bank Fees | 200 | 200 | 200 |
| | | Office Supplies (Paper, Ink, & Packing Material) | 600 | 600 | 600 |
| | | Retail Store Supplies (Price tags, trash bags, paper products) | 100 | 100 | 100 |
| | | Sales Tax | 2500 | 2500 | 2500 |
| | | Critical Vendor payment: Mid Atlantic Ammo* | 9000 | | |
| | | Inventory Reserve | 3000 | 7500 | 7500 |
| | | Emergency Reserve | 1500 | 1500 | 1500 |
| | | Shopify Platform Charges | 1500 | 1500 | 1500 |
| | | Insurance | 594 | 594 | 594 |
| | | Advertising | 1520 | 1520 | 1520 |
| | | Monthly Owners Salary | 7500 | 7500 | 7500 |
| | | SC DOR PRIORITY CLAIM (pay at confirmation) | 1404 | | |
| | | Secured Creditor: Onramp | | 1050 | 1050 |
| | | Secured Creditor: Quick Bridge | | 2750 | 2750 |
| | | **Total Expenses** | 36315 | 30411 | 30411 |
| | | **Net Disposable Income** | 162 | 6066 | 6066 |

*balance of pre-petition claim, paid pursuant to order allowing payment to critical vendor on final basis